## LIABILITY FOR SERVICES OF ATTORNEYS IN DEFENDING A PUBLIC BOARD.

Common Pleas Court of Hamilton County.

BOARD OF EDUCATION, BY ALFRED BETTMAN, CITY SOLICITOR, ET AL v. BOARD OF EDUCATION ET AL.[*]

Decided, November, 1914.

*Office and Officer—Employment of Outside Counsel to Defend a Public Board—Good Faith—Officers Not Liable Under a Contract for Such Services, When.*

When the legally constituted counsel of a public board refuse to resist an action in which the board is vitally interested and special counsel are employed to make the necessary defense, the board, rather than its members in their individual capacity, will be held liable for the fees of such counsel, particularly where no bad faith is shown and the members of the board serve without compensation.

CALDWELL, J.

This is a suit to enjoin the payment of fees that are claimed to be due defendants, Simeon M. Johnson and William Thorndyke, for services alleged to have been rendered under a contract with the old school board of Cincinnati.

At the hearing of this case, there was little or no conflict in the evidence. It is admitted that the board of education of the city of Cincinnati did, on December 29, 1913, pass a resolution calling upon the then city solicitor, Alfred Bettman, to appear

---

[*]Affirmed, *Board of Education* v. *Board of Education,* 22 C.C.(N.S.),—.

before it and state whether or not he would resist the application of James G. Fisk to the Court of Appeals of Hamilton County, Ohio, for a writ of mandamus against that board, and make a defense for the board on the ground that the so-called Jung small school board law (103 O. L., 225) was unconstitutional and void in that it contravenes the provisions of Article VI, Section 3, of the Ohio Constitution, requiring that:

"Each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education,"

and that it also contravenes the provisions of Article II, Section 26, of the Ohio Constitution, requiring that:

"All laws of a general nature, shall have a uniform operation throughout the state."

It is true that the Jung law did postpone any possible referendum on the question of the number of members of the board of education for a period of two years, and that no election of members could possibly be had under the Jung law for a period of four years. It is also true that the law did not apply to all cities alike, but created classes based on population. However, the Supreme Court of Ohio held in the case of *State, ex rel Samuel Ach et al,* v. *J. Corliss Evans et al,* that the law was valid and constitutional and did not contravene either of these constitutional provisions.

The evidence discloses that Mr. Bettman complied with the request of the board of education to appear before it, but refused to resist the application of Mr. Fisk upon the ground of the unconstitutionality of the Jung law, and in refusing, he used this language:

"I am not a fit person to present that defense because I am on record as believing the statute to be constitutional, and I believe it to be constitutional and will not be willing in said suit to raise and argue the defense of the unconstitutionality of the small school board statute."

Mr. Fisk's application for a writ of mandamus was based upon a refusal of the board to canvass the vote for members of the board of education, a duty imposed upon the board by Section 5111 of the General Code. Said Solicitor Bettman did offer, however, to resist the Fisk application on the ground that the duty of canvassing the vote of the board of education was not imposed on boards of education in registration cities under Section 5115 of the General Code. The election at which Mr. Fisk received such number of votes as entitled him to be declared elected to the board of education was held under the provisions of the Jung law. Therefore, if that law was unconstitutional in the particulars claimed, an answer setting up such invalidity would be a complete defense for the refusal of the board to canvass votes cast at such election and would necessarily raise the question of the constitutionality of the act.

It is within the knowledge of the court that the question of the invalidity of the Jung law had been receiving public attention for months prior to the action of the board. The old board of education was about to go out of office and the question had not been determined. Conditions would naturally be unsettled until the question was determined. The city solicitor, Alfred Bettman, who admitted on the stand that he had participated in the drafting of the Jung law, and who had given an opinion to the effect that the law was valid, refused to urge the invalidity of the act. His successor in office, Hon. Walter Schoenle, followed Mr. Bettman's opinion as to the validity of the act, and finally succeeded in establishing its validity in the Supreme Court of Ohio.

Immediately after Mr. Bettman's refusal to present the question of the invalidity of the act, the board of education adopted the following resolution:

"WHEREAS, In the judgment of this board, the so-called Jung small school board law, as enacted by the last General Assembly of Ohio (Vol. 103, Ohio Laws, page 275), is unconstitutional and void, in that it contravenes the provision of Article VI, Section 2, that

"Each school district embraced wholly or in part within any city shall have the power, by referendum vote, to determine for itself the number of members and the organization of the district board of education."

And also the provision of Article II, Section 26, that

"All laws of a general nature shall have uniform operation throughout the state;" and

"WHEREAS, It is the sense of this board that the validity of said law, or its invalidity, should be established by the decision of a court of competent jurisdiction; and

"WHEREAS, James G. Fisk, claiming to have been elected a member of the board of education at the pretended school election, held Tuesday, November 4, 1913, in the school district of the city of Cincinnati, under the provision of said law, has filed in the court of appeals of this county, a petition in mandamus to compel this board of education to canvass the vote of said pretended election, to enter the result thereof on its records, and to declare the said James G. Fisk duly elected to the office of member of this board of education for a term of two years; and

"WHEREAS, Litigation of a similar nature, affecting the validity of said small school board law, and a chaotic condition of affairs generally, are threatened, according to the public press; and

"WHEREAS, The city solicitor has rendered an opinion in writing to this board, holding said Jung small school board law valid and constitutional, and has also declined to resist the application for a writ of mandamus against this board in the proceedings instituted by James G. Fisk in the court of appeals, on the ground that said Jung small school board law is unconstitutional and void in the particulars above set forth; now, therefore be it

"*Resolved,* By the board of education of the school district of the city of Cincinnati that Simeon M. Johnson and William Thorndyke, attorneys-at-law, be now retained to represent this board as special counsel in the mandamus proceedings pending in the court of appeals, wherein James G. Fisk is relator, and the board of education of the school district of the city of Cincinnati is defendant; and the said Simeon M. Johnson and William Thorndyke are hereby directed and authorized to enter the appearance of this board in said proceedings, waive the issuance of the alternative writ or any other process in said proceedings, to take such steps as they may deem advisable in order to obtain,

without delay, the decision of the proper court upon the constitutionality of the said Jung small school board bill, and also to assist any other legal counsel of this board of education of the school district of the city of Cincinnati in any suit or proceeding which it now or may be hereafter instituted, wherein said board is a party plaintiff or defendant, involving the constitutionality or validity of the above law or any question thereunder; and be it further

"*Resolved*, That a retainer of $1,500 each be paid to said Simeon M. Johnson and William Thorndyke for the services herein contracted for, which sum shall be in full for all of said services, and that an additional sum of $300 be paid to them for expenses, including printing, court costs, briefs, records and incidentals, any unexpended balance to be repaid this board; and be it further

"*Resolved,* That the clerk be instructed to certify that the sum of thirty-three hundred ($3,300) dollars of the balance in the contingent fund is available for the payment of said retainer fees and expenses, said sum being in the treasury to the credit of said contigent fund, and the said sum of thirty-three hundred ($3,300) dollars is hereby appropriated to the payment of said retainer fees and expenses.

"DECEMBER 29, 1913.

"I hereby certify that the money required for the payment of attorney's fees and the court costs provided for in the within resolution, viz: $3,300, is in the treasury to the credit of the contingent fund, and not appropriated for any other purpose.

"WM. GRAUTMAN, *Clerk.*"

The sole question before the court in this case is, did the board of education have any authority in law to pass the resolution employing Messrs. Thorndyke and Johnson?

The undisputed testimony shows that the services rendered were reasonably worth the amount the resolution authorizes to be paid; that it was necessary to defend not only the Fisk application, but other proceedings as well under the resolution of employment above set forth in full, and under a further resolution requiring Messrs. Johnson and Thorndyke to defend other suits growing out of the resolution employing them. The suits in question are: No. 292, on the docket of the Court of Appeals of Hamilton County, a proceeding in mandamus; No. 301, on the docket of the Court of Appeals of Hamilton County, Ohio, a

proceeding in quo warranto; No. 55832, on the docket of the Superior Court of the City of Cincinnati, a proceeding in injunction; No. 155671, on the docket of the Court of Common Pleas of Hamilton County, Ohio, also a proceeding in injunction; No. 14341, on the docket of the Supreme Court of Ohio, a proceeding in mandamus; No. 14466, on the docket of the Supreme Court of Ohio, a proceeding in quo warranto. There can be no question that all of these suits grew out of the effort of the board of education to test the validity of the Jung law and to determine the constitutionality thereof. An examination of the briefs filed discloses that counsel on both sides exercised their utmost diligence in making the proper presentation of their respective claims to the several courts in which they appeared.

The Supreme Court finally disposed of the controversy in the case of *State of Ohio, on the relation of Samuel Ach et al*, v. *J. Corliss Evans et al*, holding the Jung law valid in all respects.

There has been no question raised of the good faith of the old or large board in seeking an orderly presentation of their side of the controversy to the proper tribunal. An examination of the record and agreed statement of facts in the Supreme Court proceedings disclose beyond question that there was reasonable ground for the large board of education to question the validity of the act. It was of great public importance that the question of the constitutionality of the act be determined. The court may say that the board of education properly awaited the verdict of the people on the question of a large or small council before announcing an intention of questioning the validity of the small school board law. The Jung law prohibited a referendum for two years and an election under it for two additional years. A careful perusal of the briefs of counsel on both sides fully warrant the conclusion that the questions involved affecting nearly every large school district of the state, should have been submitted to the highest tribunal of the state for decision. It appears from the evidence that the Supreme Court ordered from the bench during oral argument that special attention be given the referendum question by counsel on both sides. It also appears from the evidence that during the preliminary hearing

in the court of appeals on the Fisk suit that the city solicitor, Mr. Bettman, objected to Messrs. Johnson and Thorndyke appearing on behalf of the board of education, or filing an answer for said board, but that they were permitted by the court so to appear and file their answer, after the court had been informed by counsel for said board of education that they represented said board of education and read the resolutions of employment to the court. Therefore, it is the opinion of the court that the court of appeals recognized Johnson and Thorndyke as the counsel representing the board of education; so also is it the opinion of the court that when the Supreme Court permitted counsel to appear and argue the case in court, and file briefs in the case, they recognized them as counsel for the old board of education, for the litigation in the Supreme Court was in fact to determine the constitutionality of the act in question, and was to all intents and purposes a suit against the old board of education, enjoining the members, or a number of them, from acting as such.

The same question as to the right of public officers to employ other attorneys than the legally constituted counsel of such officers, has been before the courts of this state before. And it has been uniformly been held that where the legally constituted counsel refuses or is adversely interested, such employment is legal and proper.

In *State, ex rel*, v. *Commissioners*, 8 N.P.(N.S.), 281, Judge Hunt held:

"In the absence of any statutory provision, either express or implied, other persons can not be legally employed and paid out of the public treasury to perform the duties of an officer provided by law, *unless such officer refuses to act or becomes adversely interested.*"

In a case very similar to the one at bar, *Caldwell* v. *Marvin et al*, 8 N.P.(N.S.), 390, Judge Hunt held again:

"It is claimed in this case that no valid contract could have been made by the board of education for services of attorneys

in a quo warranto proceeding. The city solicitor, under Section 3977, was the legally constituted attorney or legal counsel of the board, and until he refused or failed to act, no additional legal counsel could be employed. When, however, he elected to act for the *de facto* board, and not for the board *de jure*, other counsel was necessary. The ordinary and necessary method of conducting a legal proceeding is with the assistance of legal counsel. If the right of a board of education to exercise some 'single power was challenged in a quo warranto proceeding, there would be no question of the implied right to employ counsel in the absence of legally constituted counsel, or upon the failure or refusal of such counsel to act. Why should the rule be different where the right to exercise any power, whatever, is questioned and proper to be established? The public is interested in having its legally elected officers perform their duties, even though less interested than in having such duties performed."

This decision disposes of the contention that Messrs. Johnson and Thorndyke were acting in the quo warranto proceedings in the Supreme Court for individuals and not for the board of education.

And the decision of Judge James M. Smith in *State, ex rel Matthews,* v. *Boyden, Auditor,* 18 C. C., 282, also sustains the right of the board of education to be represented in a case wherein its rights are vitally affected, even though it is not a formal party. However, in the case at bar, Messrs. Thorndyke and Johnson obviously are appearing for the defendant, the board of education, Mr. Schoenle not pretending to represent any other than the plaintiff.

It appears from the pleadings that when the personnel of the board changed, all existing contracts with Messrs. Johnson and Thorndyke were rescinded. Counsel for plaintiff did not touch upon this point in argument at all. And from the contract of employment it is evident it can not be maintained. The contract was for a retainer due and payable immediately, but which was not drawn by agreement of Messrs. Johnson and Thorndyke with Solicitor Bettman, that a full opportunity might be had to test the right of the board. of education to pass the resolution of employment.

The services were rendered as contracted for, and the only question that arises is, Shall they be paid for by the board of education, or by the individual members of that board who were defendants in the quo warranto proceedings in the Supreme Court? The city solicitor urges that since his predecessor gave an opinion holding the law valid, the board had no right to question its validity further, nor to employ counsel to do so. The opinion of the court in *Kloeb, Auditor,* v. *Commissioners,* 4 C.C.(N.S.), 565, is exactly in point. In that case a county auditor questioned a charge made by a newspaper for advertising the tax rate. The commissioners ordered the charge paid, and, upon the auditor's refusal to do so, a proceeding in mandamus was instituted against him. The auditor's contention was denied in all the courts. He incurred the expense of attorney fees, however, in making his defense. He contended that he resisted payment in good faith, and, therefore, was entitled to have the expense paid by the county. The county commissioners denied his right to employ counsel, and he in turn instituted a mandamus proceeding agaist the commissioners to compel payment. The court held:

"A public officer is an agent of the public, and is governed as to the expenses which he may in good faith incur by the same rule that would be applicable to like acts of a private agent, or of a guardian or administrator, and is entitled to be reimbursed therefor."

Norris, Judge, says at page 573:

"Courts have held that public officers, not idly and stubbornly and in bad faith, but where reasons actually exist, or when to a prudent man, acting in good faith, and with that degree of circumspection and discretion that a prudent man under like circumstances would exercise, reasons appear to exist which are grounds for refusal to perform a ministerial act that otherwise would be a clear official duty, such public officers may make contest in the courts against the writ of mandamus to compel them to perform. It was so held in the cases which gave rise to plaintiff's claims in this action, or else those cases would never have been.

"Though the refusal of the officer to act may be in violation of official duty, which requires him to perform a ministerial obligation, the contest—the appeal to the courts, the submission of the reasons for refusal, to the law—is not of itself and in itself a transgression. It is the exercise of a right, and its exercise when in good faith, and based upon the honest judgment of a prudent man, properly discharging as seen to him, under the circumstances, the functions of his office and his duties, it is not improper and ought not draw upon him mulctary penalty, by imposing upon the individual the expense of the litigation."

Clearly in the case at bar, bad faith can not be charged. It is in evidence that no salaries are paid members of the board of education, and that the expenses allowed them by law have always been waived, and the members of the board merely took what steps they could to insure a fair presentation of their side of this important public question, and in doing so, the court is of the opinion they performed an important public duty, and, as said by Judge Norris, in the case just cited, for so doing they ought not to draw mulctary penalties by having imposed upon them as individuals the expense of the litigation. In honesty as well as in law, the counsel they employed should be paid from the public funds, and the petition for injunction will be dismissed and judgment will be awarded the defendants for the amount claimed.